UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

BIZZABO LTD. and BIZZABO, INC.,

                    Plaintiffs,

          v.

PIXELINE TECHNOLOGIES, INC., also
known as PIXELINE TECHNOLOGIES LTD.;
ELAD ROSANSKI, JOHN DOES 1-2,

                    Defendants.

-------------------------------------------------------- X

Index No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Bizzabo Ltd. and Bizzabo, Inc. (together, "Bizzabo" or the "Company" or "Plaintiffs"), by and through their attorneys Cooley LLP, complains and alleges against Pixeline Technologies, Inc., also known as Pixeline Technologies Ltd. ("Pixeline"), Elad Rosanski, and John Does 1 and 2 (collectively, "Defendants") as follows:

## I.    INTRODUCTION

1.      This action seeks to address the theft of highly confidential proprietary information and trade secrets by Bizzabo's former business vendor, Pixeline, as well as the use of that information in brazen efforts by Pixeline to disrupt Bizzabo's business, destroy its reputation and good name, interfere with its customer relationships, and outright steal customers.

2.      As a prior business relationship between the two companies deteriorated, Defendant Rosanski, the CEO of Pixeline, surreptitiously intruded on Bizzabo's computer systems, sought out documents containing Bizzabo's highly sensitive and confidential information, and downloaded hundreds of documents for which he and Pixeline had no legitimate business use.

3.     These documents provided Pixeline with an exact roadmap to Bizzabo's technological capabilities, current and future strategic business plans, customer lists and pricing information, and research and development efforts, which Pixeline is already using to injure Bizzabo's reputation and client relationships and unfairly compete with Bizzabo. Specifically, Defendants contacted Bizzabo customers using the information they had unlawfully accessed to cause such customers to cancel existing contracts with Bizzabo and to secure a competitive advantage over Bizzabo.

4.     If the Court does not intervene by entering a preliminary and permanent injunction against Defendants, Bizzabo will continue to suffer and Pixeline will continue to benefit from this unfairly and unlawfully gained information.

## II.     THE PARTIES

5.     Plaintiff Bizzabo Ltd. is an event management software company that services in-person, virtual, and hybrid events. Bizzabo Ltd. is a company organized under the laws of the State of Israel, with its principal place of business in New York, New York. Bizzabo Ltd. is the parent company of Plaintiff Bizzabo Inc.

6.     Plaintiff Bizzabo, Inc. is Bizzabo's Ltd.'s marketing, sales, and distribution arm. Bizzabo Inc. is a Delaware corporation and is registered to conduct business in New York. Bizzabo's principal place of business is in New York, New York.

7.     Defendant Pixeline Technologies, Inc. provides registration solutions, technologies, and services for in-person conferences and events. Pixeline is a Delaware corporation and is registered to conduct business in New York. On information and belief, Pixeline is also known as Pixeline Technologies Ltd. and purports to be an entity formed under the laws of the State of Israel. On information and belief, the two entities are in fact one company and are used by Pixeline interchangeably. Pixeline frequently does business as XTAG, which is the name

of one of its products. Pixeline's principal executive office address is 866 UN Plaza, Suite 1, New York, New York 10017. On information and belief, Pixeline also maintains offices at 1120 Avenue of the Americas, New York, New York 11036 and 454 Avenue Y, Brooklyn, New York 11223.

8.      Defendant Rosanski is a founder and the Chief Executive Officer of Pixeline. Rosanski's office is located at 866 UN Plaza, Suite 1, New York, New York 10017. Upon information and belief, Rosanski also maintains a residence in Florida.

### III.   JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this matter presents a federal question. This Court has supplemental jurisdiction over Bizzabo's state law claims under 28 U.S.C. § 1367(a).

10.     This Court has personal jurisdiction over Defendants because they maintain offices, and are present, in New York. In addition, this Court has personal jurisdiction over Defendants pursuant to CPLR 302(a)(1), (a)(2), and (a)(3).

11.     Venue is proper in this District because Bizzabo has its principal place of business and United States headquarters in this District and key acts alleged herein occurred in this District.

### IV.   FACTUAL ALLEGATIONS

####   A.   Bizzabo's Business and its Confidential and Trade Secret Information.

12.     Bizzabo is an event management software company which provides a platform that powers immersive in-person, virtual, and hybrid events, including conferences, summits, corporate retreats, marketing events, expositions, and webinars. Bizzabo's technology powers all aspects of event planning and execution, including scheduling, marketing, ticket sales, website and mobile application building, attendee management and registration, broadcasting, and audience engagement.

13.     Bizzabo has been extremely successful since it was founded in 2011.  It has captured a material portion of the event management market share, earned itself a reputation for amazing products and service, and earned numerous accolades from industry groups and customers, including awards for Best Conference Technology, the People's Choice Award, Best Event Management Platform, and 2022 Big Innovation Award, to name a few.  Bizzabo's rapid success and sterling reputation have allowed it to recently raise a funding round of more than $100 million.

14.     Bizzabo's success is largely driven by its constant internal efforts to better itself as a company, including by advancing its strategic business plan, products, technology, and customer relationships.  In that regard, Bizzabo has invested substantial time, effort, and resources developing its confidential trade secrets and proprietary information.  Such confidential trade secrets and proprietary information include information relating to Bizzabo's: (i) technology, platforms, product capabilities, and software; (ii) strategic objectives as a business, including its business plan and its vision and goals for its future; (iii) analysis of current and future market and client needs; (iv) confidential comparisons between Bizzabo product offerings and those of its direct and indirect competitors; (v) internal proprietary policies and procedures, including policies and procedures relating to effectively and efficiently responding to customer issues and concerns; (vi) secret information regarding technologies Bizzabo has acquired through merger, acquisition, and licensing activities, and (vii) pricing and sales information, including how Bizzabo intends to structure the pricing of current and future product offerings, customer and event-attendee lists, and information Bizzabo learned in the course of servicing its clients, such as customer preferences.

15.     Bizzabo's confidential trade secrets and proprietary information is recorded in documents and work product Bizzabo has prepared in the course of its business and has stored on its secure digital drives.

16.     If a competitor or third party were to gain access to its confidential trade secrets and proprietary information, it would be devastating to Bizzabo's business. For example, as it relates to its technology, the documents reflecting Bizzabo's trade secrets and proprietary information include step-by-step breakdowns of current and future product offerings, the status of development, and the timeline of development. As another example, these documents contain detailed information about how Bizzabo intends to service—including, by developing new technologies and features—specific events that customers have engaged Bizzabo to service.

17.     Access to such documents would enable a third party to gain an unlawful and unfair advantage over Bizzabo. Such a third party could replicate Bizzabo's technology and product offerings, internal policies and procedures, pricing structures, and strategic plans, without investing the significant time and effort—including years of research and development by the Company and its employees and millions of dollars of investment—expended by Bizzabo, thereby reducing or eliminating the competitive advantage Bizzabo has earned as a business.

18.     Access to such information would also allow a competitor or third party who is so inclined to contact Bizzabo's customers and to interfere with such relationships and with specific events in which Bizzabo was engaged to service. For example, access to Bizzabo's plans relating to upcoming events could allow a third party with a motive to damage Bizzabo to contact such clients and cause panic and confusion in advance of their events.

**B.** **Measures Taken by Bizzabo to Secure Confidential and Trade Secret Information.**

19.     Bizzabo uses an array of measures to maintain the secrecy of its confidential and trade secret information.

20.     For example, Bizzabo has nondisclosure agreements with contractors, vendors, suppliers, and business partners.    Bizzabo also requires that all employees execute a Confidentiality, Proprietary Rights, and Restrictive Covenants agreement when they commence their employment with Bizzabo.    This agreement requires that all employees maintain confidentiality over Bizzabo's private and proprietary information and that all such information is returned or destroyed upon their departure from the Company.

21.     Bizzabo uses physical security measures to protect its confidential and trade secret information, such as restricting entry into Company facilities and requiring key card access.

22.     Bizzabo tightly controls access to its electronic systems.    Bizzabo's proprietary database of private company information, and access to its computer systems, requires a password-protected Company-provided account.    Bizzabo employees are not permitted to disclose their passwords to anyone else.    Bizzabo also employs other electronic security measures such as disk encryption and firewalls.

23.     Bizzabo primarily manages documents through Google Drive.    The Drive is only accessible with a Bizzabo account.    The default security setting is that files are "private" and can only be viewed by the author of the documents.    The security settings for documents created for the purposes of collaboration within Bizzabo are often changed so that they are only accessible to Bizzabo users with a link to the file.

24.     Because of the importance of maintaining the confidentiality of these documents, many are marked "confidential and proprietary."

**C.      Bizzabo's Relationship with Pixeline.**

25.      Pixeline was founded by Defendant Rosanski and others.

26.      Starting in or around 2019, Pixeline began providing services to Bizzabo as a vendor and business partner.  Specifically, Pixeline provided on-site event services as a "private label provider," meaning that Pixeline services and employees appeared to all as if they were part of Bizzabo.

27.      Pixeline provided services on-site at in-person events, including services like renting tablets and printers for check-in, on-site software, and personnel to service on-site events.

28.      As a private label vendor that serviced many of Bizzabo's events, certain Pixeline employees were provided with Bizzabo email accounts to support customers' seamless experience.

29.      Pixeline and Rosanski were expected to comply with and respect the confidential nature of Bizzabo's trade secrets and proprietary information.  In particular, Defendant Rosanski personally signed a confidentiality agreement on November 9, 2020 titled "Confidentiality and Proprietary Rights Undertaking" ("the Confidentiality Agreement").

30.      The Confidentiality Agreement defines Proprietary Information as:

> any and all information or data of the Company pertaining to the business or affairs of the Company of a confidential and/or proprietary nature, including information received by the Company from any third party subject to obligations of confidentiality towards said third party including without limitation, any technical, proprietary, financial information, trade and business secrets, research and development, processes, patents, improvements, ideas, Inventions (whether reduced to practice or not), techniques, products, and technologies (actual or planned), financial statements, business plans, marketing plans, strategies, forecasts, customer and/or supplier lists and/or relations, research and development activities, formulae, data, know-how, designs, discoveries, models, vendors, computer hardware and software, drawings, operating procedures, pricing methods, marketing strategies, future plans, dealings and transactions.

(Confidentiality Agreement § 1.6.)

31.     The Confidentiality Agreement provides, *inter alia*, that Rosanski understands that Bizzabo's "success is dependent upon the protection of the Proprietary Information, and that [Rosanski] shall have access to valuable knowledge, information and data relating to the Proprietary Information in the Company's reliance upon the existence of a relationship of confidence and trust between the Company and [Rosanski.]" (Confidentiality Agreement § 2.1.)

32.     In the Confidentiality Agreement, Rosanski agreed "to keep in confidence and trust all Proprietary Information" and that he will not "directly or indirectly, in whole or in part, use any Proprietary Information, nor will [Rosanski], directly or indirectly, disclose any Proprietary Information or anything relating thereto to any person or entity, other than in the course of performing the duties for the benefit of the Company." (Confidentiality Agreement §§ 2.2, 2.3.)

33.     Finally, Rosanski promised to "take strict precautions to maintain the confidentiality of the Proprietary Information and take appropriate action to ensure the compliance with the obligations set forth herein." (Confidentiality Agreement § 2.4.)

34.     In 2021, Bizzabo and Pixeline engaged in discussions regarding a potential acquisition of Pixeline, but the two companies were not able to come to an agreement and Bizzabo ultimately did not acquire Pixeline.

35.     In November 2021, Bizzabo acquired Klik, a wearable technology to power on-site events. After the acquisition of Klik, Bizzabo still intended to utilize vendors, including Pixeline, to provide on-site event services (which is Pixeline's core business).

36.     In late 2021 and early 2022, the relationship between Bizzabo and Pixeline deteriorated (due to a number of factors). Pixeline's management became resentful and paranoid about its relationship with Bizzabo.

**D. Pixeline's Theft of Confidential and Trade Secret Information.**

37. In May 2022, Bizzabo conducted a forensic investigation of its electronic Google Drive.

38. The investigation revealed that—in direct violation of the Confidentiality Agreement and applicable state and federal law—Rosanski had downloaded highly confidential and valuable company information that neither he, nor Pixeline had no right to access and no legitimate business need for. Indeed, logs of activity reviewed by Bizzabo's data security professionals confirm that Rosanski himself downloaded hundreds of files, with many downloads taking place in close temporal proximity, sometimes, with dozens of commercially sensitive documents being downloaded in a matter of minutes. The logs of Rosanski's downloads establish an intentional plan to access Bizzabo's trade secrets and proprietary information for Pixeline's illegitimate purposes.

39. At this time, Bizzabo's investigation suggests that Rosanski in bad-faith, circumvented Bizzabo's document security measures by spending hours scouring Bizzabo's documents and communications for secure links to protected documents securely stored on Bizzabo's Google Drive which Rosanski was never privy to. Rosanski likely used such links to covertly gain access to protected documents.

40. Rosanski knew that he did not have permission to view or download such documents and that they contained trade secrets and proprietary information. The investigation into how Rosanski gained access to these documents is ongoing.

41. Many of the documents Rosanski downloaded are exactly the kinds of documents referred to above, which would allow a third party to steal Bizzabo's trade secrets and proprietary information, damage its reputation, and interfere with its customer relationships.

42.     For example, Rosanski downloaded a project plan for one of Bizzabo's upcoming client events.  This document includes a step-by-step breakdown of the services and software Bizzabo is providing to the client, the status of the software's development, the timeline of development, and what discovery is being done for the development of other applications.  By illegitimately accessing this proprietary information, and cross referencing this information with other confidential and proprietary information Rosanski improperly downloaded, Bizzabo learned, not only what it needed to do to compete with Bizzabo in the future, but a roadmap for how to do it.  Pixeline also learned confidential details about Bizzabo's plans, including if Bizzabo plans to debut new features at the event.  Even more, Pixeline gained descriptions and instructions on the development of Bizzabo technology, applications, and software, and by this tortious act has acquired an illegitimate business advantage it can use to unfairly compete with Bizzabo.

43.     Rosanski also downloaded Bizzabo's internal Roadmap, a document detailing the Company's strategic vision and exact plans to accomplish it.  This document provided Rosanski a complete how-to guide for competing with Bizzabo.  This document is marked "confidential" and was not meant to be shared outside of the company.  Entire sections of this document are devoted to products and features Bizzabo had not yet fully released.  Defendants also download a launch plan, which includes the complete plan for Bizzabo's latest onsite offerings.  This includes timelines and status updates.

44.     Yet another document Rosanski downloaded contains detailed information about a future software offering, including the features and why and how they will be developed.  It includes information about pricing, a projected timeline of development, and storyboards.  Pixeline now has the information necessary to position its offering to customers, develop software with equivalent functionality, and unfairly compete with Bizzabo.

45. Another document Rosanski downloaded contains information about the technology Bizzabo recently acquired called Klik, including Klick's confidential customer lists, project pipeline, and pricing information.

46. Even if Rosanski had originally been provided access to some of these documents, Defendants' improper use of the information in these documents is a breach of Rosanski's Confidentiality Agreement.

**E.    Pixeline Use of Bizzabo's Trade Secrets.**

47. Pixeline has already begun contacting current Bizzabo customers and deploying the confidential information it stole to its own economic advantage.

48. Pixeline has used the information it learned to tarnish Bizzabo's sterling reputation and dimmish customer confidence in Bizzabo's ability to successfully manage upcoming events. This has caused panic and confusion among Bizzabo's customers. It has also caused a significant strain on Bizzabo's customer success team, which now has to invest great efforts to allay customers' fears and to save Bizzabo its own accounts.

49. For example, Pixeline has contacted a customer that has engaged Bizzabo for an upcoming event in June. During that conversation, a Pixeline employee told the customer—based on information it learned through its theft of Bizzabo's trade secrets and proprietary information—that Bizzabo is still in the process of developing certain features and offerings and that such features will debut for the first time during that customer's event. Pixeline (falsely) told the customer that Bizzabo could not competently service the customer's upcoming event and would not be able to meet the customer's needs. Pixeline offered to have their own employees attend the event at no cost to ensure that the event is properly serviced. This message caused panic and confusion by the customer, which immediately raised the issue with Bizzabo.

50.     Pixeline has contacted another of Bizzabo's customers with an upcoming event, in June 2022.  This was the first in-person event for which the customer had engaged Bizzabo.  Using trade secrets and proprietary information relating to this event and Bizzabo's on-site product offerings and capabilities, Pixeline persuaded the customer that Bizzabo would not be able to adequately service the event, causing the customer to panic.  Because of this communication, the customer decided to call off its agreement with Bizzabo to provide on-site services—worth nearly $300,000—and contract with Pixeline directly.  Bizzabo has likely lost this customer's in-person on-site event business forever, causing its substantial current and future damages.  Even more, because event organizers communicate about emergent issues in the industry, word of this cancellation will likely spread, causing the harm to Bizzabo's goodwill and reputation to multiply.

51.     Pixeline has called other customers with the intent to interfere with Bizzabo's existing contractual relationships and prospective economic advantage and with the intent to harm Bizzabo and ruin its reputation.  For example, Pixeline has called, emailed, and sent text messages to the personal cellular phone of the event coordinator for one of Bizzabo's longest standing and best customers who has engaged Bizzabo to service more than 50 (fifty) events over the last seven years.  The client was very annoyed by Pixeline's conduct, but so far, has decided to stick with Bizzabo.

52.     Rosanski and Pixeline have used and intend on continuing to use the documents Rosanski illegally downloaded to interfere with customer relationships, damage Bizzabo's reputation, and steal customers for Pixeline's gain.

53.     In addition, at least one of the documents Rosanski downloaded was forwarded to an external email address.

54.     Considering Rosanski's relationship with Pixeline and that his conduct was for the benefit of Pixeline, other employees at Pixeline, namely John Does 1 and 2, likely actively participated in the scheme to use Bizzabo's confidential and proprietary information to injure Bizzabo's reputation, unfairly compete with Bizzabo, and steal its customers, including by taking overt acts in furtherance of the scheme.

**FIRST CLAIM**
Violation of Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836 *et seq*.

55.     Plaintiff re-alleges and incorporates by reference each and every forementioned allegation of this Complaint.

56.     Bizzabo owns or possesses trade secret information detailing Bizzabo's products and services, future plans, client offerings, and more.

57.     This proprietary trade secret information relates to Bizzabo's products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

58.     Bizzabo has taken reasonable measures to keep such information secret and confidential.

59.     Bizzabo has at all times maintained stringent security measures to preserve the secrecy of such information.

60.     Due to these security measures, Bizzabo's trade secrets are not available for others to use through any legitimate means.

61.     Bizzabo's trade secrets derive independent value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

62.     In violation of Bizzabo's rights, Defendants misappropriated Bizzabo's confidential and proprietary trade secret information in the improper and unlawful manner alleged herein.

63.     Defendants' misappropriation of Bizzabo's confidential and proprietary trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

64.     If Defendants are not enjoined from keeping and utilizing Bizzabo's trade secret information, Defendants will continue to misappropriate and use such information for their own illegitimate benefit and to Bizzabo's detriment.

65.     As the direct and proximate result of Defendants' conduct, Bizzabo has suffered and will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be determined at trial.

66.     Because Bizzabo's remedy at law is inadequate and would offer incomplete relief, it seeks a preliminary and permanent injunctive relief to recover and protect its confidential, proprietary and trade secret information from further use or disclosure.

67.     Bizzabo may also be entitled to an award of compensatory, exemplary, punitive, and consequential damages and recovery of its attorney's fees incurred herein.

## SECOND CLAIM
Trade Secret Misappropriation

68.     Plaintiff re-alleges and incorporates by reference each and every aforementioned allegation of this Complaint.

69.     Bizzabo has an array of trade secret and proprietary information, as alleged herein.

70.     Bizzabo's confidential trade secret and proprietary information has independent economic value from not being generally known to the public and has provided Plaintiff with a legitimate commercial advantage over actual and would-be competitors.  Plaintiff has made, and

continues to make, diligent efforts to protect the confidential trade secret and proprietary information. Accordingly, the confidential trade secret and proprietary information constitutes "trade secrets," under New York law.

71.     Defendants have improperly used or disclosed Plaintiff's confidential trade secrets and proprietary information and has done so with knowledge and intent of the impropriety of its actions. Defendants' use or disclosure of Plaintiff's confidential trade secret and proprietary information has been and will continue to be in direct violation of New York law.

72.     Defendants have willfully and maliciously misappropriated and/or wrongfully used Plaintiff's confidential trade secret and proprietary information as described above, and continues to misuse the above-described trade secrets for purposes of personal gain and/or gaining a competitive advantage over Plaintiff.

73.     Upon information and belief, Defendants have gained, or will gain, substantial benefit from its use of Plaintiff's confidential trade secrets and proprietary information to Plaintiff's substantial detriment.

74.     As a result of Defendants' unlawful conduct, Plaintiff's confidential trade secret and proprietary information has been threatened and/or compromised.

75.     As a direct and proximate result of Defendants' misappropriation of trade secrets, actual or threatened, Plaintiff has been damaged in an amount to be ascertained at trial.

76.     Unless enjoined by this Court, said misappropriation of trade secrets threatens to, has already, and will cause great and irreparable injury to Plaintiff, and Plaintiff has no adequate or other remedy at law for such acts and threatened acts.

77. Because the above-described conduct was willful, wanton, malicious and oppressive, Plaintiff is entitled to an award of exemplary and punitive damages against Defendants in an amount to be proven at trial.

## THIRD CLAIM
Breach of Contract

(Asserted Against Defendant Rosanski)

78. Plaintiff re-alleges and incorporates by reference each and every aforementioned allegation of this Complaint.

79. The Rosanski's Confidentiality Agreement is a valid, binding, and enforceable written agreement between Rosanski and Bizzabo.

80. Bizzabo has performed all obligations under the Confidentiality Agreement.

81. Rosanski breached the Agreement by searching for and downloading Bizzabo's proprietary information for which he had no authorization to access and no legitimate need to see or download.

82. Rosanski breached the Agreement by using Bizzabo's proprietary information for improper purposes that were not authorized by the Confidentiality Agreement.

83. Rosanski breached the Agreement by disclosing Bizzabo's proprietary information to Bizzabo customers.

84. On information and belief, Rosanski breached the Agreement by disclosing Bizzabo's proprietary information to Pixeline and other employees of Pixeline.

85. Rosanski breached the Agreement by not keeping in confidence and trust Bizzabo's proprietary information.

86.     Bizzabo is suffering and will continue to suffer immediate, immeasurable, and irreparable harm, to its market share, customer relationships, supplier relationships, trade secrets, and goodwill

87.     As a result of Rosanksi's breaches, Bizzabo has and continues to sustain damages in an amount to be proven at trial.

**FOURTH CLAIM**
Tortious Interference with Contract

88.     Plaintiff re-alleges and incorporates by reference each and every aforementioned allegation of this Complaint.

89.     Valid contracts exist between Bizzabo and its customers.

90.     Defendants, by virtue of their prior work for Plaintiff, and the information contained in the documents Defendants stole from Plaintiff's systems, knew of the existence of these contracts.

91.     By contacting Bizzabo's customers and deploying Bizzabo's proprietary information against Bizzabo, Defendants sought to procure a breach of these contracts by convincing Bizzabo customers not to use Bizzabo for upcoming events which Bizzabo was already contracted to service.

92.     At least one Bizzabo customer has cancelled its engagement with Bizzabo for an upcoming event as result of Defendants' conduct.

93.     Bizzabo was damaged by Defendants' conduct, in an amount to be determined at trial.

## **FIFTH CLAIM**
### Tortious Interference with Prospective Economic Relations

94. Plaintiff re-alleges and incorporates by reference each and every aforementioned allegation of this Complaint.

95. Bizzabo has business relationships with third-party customers who rely on Bizzabo to manage their events.

96. By contacting Bizzabo's customers and deploying Bizzabo's proprietary information against Bizzabo, Defendants sought to procure a breach of these contracts by convincing Bizzabo customers not to use Bizzabo for upcoming events which Bizzabo was already contracted to service. Defendants also sought to damage Bizzabo's client relationships and tarnish its sterling reputation so Bizzabo would not be called upon to service events for such clients and others in the future.

97. Defendants engaged in such conduct with the express intent of damaging Bizzabo's business and reputation. Defendants were motivated by animus towards Bizzabo and its management because of their business relationship which had soured and because of failed merger talks between the companies. Defendants accomplished this interference through dishonest, unfair, and improper means, including by utilizing information gained illegally through their illegal intrusion into Bizzabo's protected systems and theft of its files.

98. Bizzabo was damaged by Defendants' conduct, in an amount to be determined at trial.

## SIXTH CLAIM
### Unfair Competition

99. Plaintiff re-alleges and incorporates by reference each and every aforementioned allegation of this Complaint.

100. Defendants wrongfully accessed documents containing Bizzabo's confidential and proprietary information.

101. These documents were the culmination of Bizzabo's substantial skill, expenditure, and labors.

102. By contacting Bizzabo customers using the information that was wrongfully obtained, Defendants have unfairly exploited the skill, expenditure and labors of Bizzabo to gain a commercial advantage. Pixeline also unfairly exploited the skill, expenditure and labors of Bizzabo to gain an illegitimate commercial advantage, by communicating with customers that it had only been exposed and introduced to because of work it performed for Bizzabo.

103. As a result of Defendants' wrongful conduct, Bizzabo has been harmed and faces further irreparable harm.

104. Absent injunctive relief, Defendants will gain further commercial advantage through their misappropriation of Bizzabo's skill, expenditure, and labors.

105. Defendants' acts were knowing, willful, and in bad faith.

## SEVENTH CLAIM
### Civil Conspiracy

106. Plaintiff re-alleges and incorporates by reference each and every aforementioned allegation of this Complaint.

107.     Pixeline, Rosanski, and John Does 1 and 2 each conspired with each other to achieve a common, unlawful purpose, which included the commission of the torts and statutory violations alleged above.

108.     As alleged above, Pixeline and Rosanski each committed an overt act in furtherance of the common scheme and each of them committed or otherwise participated in the above-alleged torts and statutory violations in furtherance of that scheme.  On information and belief, John Does 1 and 2 each committed an overt act in furtherance of the common scheme and each of them committed or otherwise participated in the above-alleged torts and statutory violations in furtherance of that scheme.

109.     Accordingly, each of them is jointly and severally liable for civil conspiracy, including any damages sustained by Plaintiff in connection with Defendants commission of tortious or other unlawful acts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court:

**A.**     Enter a Preliminary and Permanent Injunction:

1.     Restraining and enjoining Defendants, from directly or indirectly:

a.     Accessing Bizzabo's computer or electronic systems, including but not limited to, email, electronic communication channels, Google Drive (or other cloud storage);

b.     Reviewing, using, disclosing, or transmitting for any purpose (including but not limited to solicitation of clients and development of technologies) any of Bizzabo's confidential or proprietary business information, including all information recorded in documents Defendants downloaded from Bizzabo's Google Drive; and

c.     Communicating with Bizzabo's current or former clients for the purpose of injuring Bizzabo's relationship, interfering with contracts or prospective

business relations, damaging Bizzabo's reputation, or unfairly competing with Bizzabo;

2.      Ordering Defendants to:

a.      Preserve all relevant and discoverable evidence by causing forensic images of all computer systems, storage, and electronic devices to be created and held by Defendants' counsel—as attorneys' eyes only material—for purposes of discovery, pending the outcome of this litigation (with proof of such preservation to be provided to Plaintiff's counsel);

b.      Work with a neutral third-party expert, retained at Defendants' expense, to catalogue Bizzabo's documents and materials in Defendants' possession, custody, or control and provide a list of such materials to counsel for the parties and the Court, under seal;

c.      Return to Bizzabo all originals, copies, or other reproductions, in any form whatsoever, of any document of Bizzabo, and (after preserving all materials and metadata, pursuant to Section 2(a) and cataloging such materials pursuant to Section 2(b)) to permanently purge or destroy any computerized or other records of Bizzabo Defendants have within their possession, custody, or control;

3.      And requiring that the neutral third-party expert referred to in Section 2(b) shall review Defendants' efforts to comply with the provisions of Sections 2(a) and 2(c) and certify to the Court that Defendants have fully complied with such provisions;

**B.**      Award Plaintiff monetary relief in an amount to be determined at trial, on a joint and several basis against all Defendants, including exemplary, punitive, and consequential damages;

**C.**      Award Plaintiff interest, litigation expenses, and attorneys' fees to the greatest extent permitted by law;

**D.**      Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated:  May 16, 2022

**COOLEY LLP**

By: _/s/ David H. Kupfer_ _____

David H. Kupfer, Esq.
Emily J. Born Esq. (*Pro Hac Vice pending*)
55 Hudson Yards
New York, NY 10001-2157
T: +1 212-479-6000
F: +1 212-479-6275
dkupfer@cooley.com
eborn@cooley.com

John H. Hemann, Esq. (*Pro Hac Vice pending*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-5800
T: +1 415-693-2000
F: +1 415-693-2222
jhemann@cooley.com

*Attorney for Plaintiffs Bizzabo Ltd. and Bizzabo, Inc.*

268954310