UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BIZZABO LTD and BIZZABO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PIXELINE TECHNOLOGIES, INC. also known as PIXELINE TECHNOLOGIES LTD., ELAD ROSANSKI, JOHN DOES 1-2, <br><br> Defendants. | Case No.: 22 Civ. 04010 (PAE) |

**Defendants' Memorandum of Law in Opposition to Plaintiffs'
Motion for a Preliminary Injunction**

POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361

*Attorneys for Defendants*

**Table of Contents**

Preliminary Statement ...................................................................................................1

Statement of Facts .........................................................................................................2

    I.       The Parties ........................................................................................2

    II.      Relevant Agreements...........................................................................2

        A.      The Parties' Main Agreement and its Exclusive Forum Selection Clause..2

            1.      The Main Agreement governs both Ltd. and Inc. entities ...............3

            2.      The Main Agreement was extended. .................................................4

        B.      The November 2020 Confidentiality Agreement ........................................4

        C.      The May 2021 Confidentiality Agreement...................................................4

    III.     The Parties' Collaboration and Computer Systems..................................................5

    IV.    The Parties' Relationship Deteriorates .....................................................................6

    V.      Working Together and Also Preserving Evidence of Bizzabo's Wrongdoing........7

    VI.    Bizzabo Clients Contact Pixeline ............................................................................8

    VII.   Bizzabo Files Litigation in New York......................................................................9

Legal Argument...............................................................................................................9

    I.       The Court should apply the forum selection clauses. ...............................................9

        A.      The Israeli forum selection clause was reasonably communicated to Bizzabo. .....................................................................................................10

        B.      The Israeli forum selection clause is mandatory. .....................................11

        C.      The claims and parties here are subject to the Israeli forum selection clause. ......................................................................................................11

            1.      Plaintiff's claims concern issues arising out of or in connection with the Main Agreement. ...........................................................11

2.      The parties to this action are subject to the agreements' forum selection clauses. ........................................................................13

D.      Bizzabo cannot show that enforcement of the Israeli forum selection clause would be unreasonable or unjust, or that it is invalid.....................14

II.      The Court lacks jurisdiction over all Defendants. ...................................15

III.      Plaintiffs have not shown that an injunction is merited............................17

A.      Bizzabo is unlikely to succeed on the merits of any of its claims. ............18

1.      Bizzabo's trade secret misappropriation claims fail.....................18

2.      Bizzabo's breach of contract claim fails.  .....................................21

3.      Bizzabo's tortious interference claims fail. ..................................21

4.      Bizzabo's common law unfair competition claim fails. ................23

5.      Bizzabo's civil conspiracy claim fails. ...........................................23

IV.      Bizzabo will not suffer irreparable harm. ................................................24

V.      The equities do not weigh in Bizzabo's favor. ........................................24

VI.      In the alternative, the Court should impose a substantial bond. ............25

Conclusion .........................................................................................................................25

**Table of Authorities**

**Cases**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009) ................................................................................. 13

*Allojet PLC v. Vantage Assocs.*,
  2005 WL 612848 (S.D.N.Y. Mar. 15, 2005) ........................................................ 15

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*,
  404 F. Supp. 3d 763 (S.D.N.Y. 2019) ................................................................. 22

*Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*,
  2007 WL 1988150 (S.D.N.Y. July 10, 2007) ...................................................... 21

*Bent v. Zounds Hearing Franchising, LLC*,
  2015 WL 7721838 (S.D.N.Y. Nov. 30, 2015) ...................................................... 12

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................. 22

*BMR & Assocs., LLP v. SFW Cap. Partners, LLC*,
  92 F. Supp. 3d 128 (S.D.N.Y. 2015) ................................................................... 10

*CleanSpark, Inc. v. Discover Growth Fund, LLC*,
  485 F. Supp. 3d 494 (S.D.N.Y. 2020) ................................................................. 15

*Comcast Corp. v. Rovi Corp.*,
  2016 WL 4991625 (S.D.N.Y. Sept. 16, 2016) ..................................................... 10

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
  241 F.3d 123 (2d Cir. 2001) ................................................................................. 12

*Freeman v. Bianco*,
  2003 WL 179777 (S.D.N.Y. Jan. 24, 2003) ........................................................ 10

*Hecklerco, LLC v. YuuZoo Corp. Ltd.*,
  252 F. Supp. 3d 369 (S.D.N.Y. 2017) ................................................................. 16

*Ho Myung Moolsan Co., Ltd. v. Manitou Min. Water, Inc.*,
  665 F. Supp. 2d 239 (S.D.N.Y. 2009) ................................................................. 24

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
  2021 WL 918556 (SDNY Mar. 10, 2021) ............................................................. 9

*Indus. Group, Inc. v. Altunkilic*,
  788 Fed. Appx. 37 (2d Cir. 2019) ....................................................................... 23

*Int'l Shoppes v. At the Airport*,
  131 A.D.3d 926 (2d Dep't 2015) .......................................................................... 23

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
  *Amministrazione Straordinaria*,
  937 F.2d 44 (2d Cir. 1991) ................................................................................... 16

*Leviton Mfg. Co., Inc. v. Reeve*,
  942 F. Supp. 2d 244 (E.D.N.Y. 2013) ............................................................. 10

*Magi XXI, Inc., v. Strato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013) ............................................................................. 13

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014) ........................................................................ 9, 14

*Metro-Goldwyn-Mayer Studios Inc. v. Canal Distrib. S.A.S.*,
  2010 WL 537583 (S.D.N.Y. Feb. 9, 2010) ............................................... 13, 14

*Midamines SPRL Ltd. v. KBC Bank NV*,
  2014 WL 1116875 (S.D.N.Y. Mar. 18, 2014) ................................................. 13

*Midamines SPRL Ltd. v. KBC Bank NV*,
  601 F. App'x 43 (2d Cir. 2015) ....................................................................... 13

*N. Atl. Instr., Inc. v. Haber*,
  188 F.3d 38 (2d Cir. 1999) .............................................................................. 18

*Pablo Star Ltd. v. Welsh Gov't*,
  170 F. Supp. 3d 597 (S.D.N.Y. 2016) ........................................................ 15, 16

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ........................................................... 9, 10, 12, 14

*Plasticware, LLC v. Flint Hills Res., LP*,
  852 F. Supp. 2d 398 (S.D.N.Y. 2012) ............................................................. 22

*Prod. Resource Group, L.L.C. v. Martin Prof'l, A/S*,
  907 F. Supp. 2d 401 (S.D.N.Y. 2012) ............................................................. 12

*Rauch Indus., Inc. v. Radko*,
  2022 WL 769385 (S.D.N.Y. Mar. 14, 2022) ................................................... 24

*Rich v. Fox News Network, LLC*,
  939 F.3d 112 (2d Cir. 2019) ............................................................................ 22

*Shaoulian-Tehrani v. Khatami*,
  2008 WL 1790386 (S.D.N.Y. Apr. 21, 2008) ................................................. 16

*Sussman v. Crawford*,
  488 F.3d 136 (2d Cir. 2007) ............................................................................ 17

*Troma Ent., Inc. v. Centennial Pictures Inc.*,
  729 F.3d 215 (2d Cir. 2013) ............................................................................ 17

*Ujvari v. 1stdibs.com, Inc.*,
  2017 WL 4082309 (S.D.N.Y. Sept. 13, 2017) ................................................ 14

*Uni-World Capital L.P. v. Preferred Fragrance, Inc.*,
  73 F. Supp. 3d 209 (S.D.N.Y. 2014) ............................................................... 24

*WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*,
  2011 WL 2565284 (S.D.N.Y. June 22, 2011) ................................................. 22

*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) ........................................................................................17

*Zirvi v. Flatley*,
  433 F. Supp. 3d 448 (S.D.N.Y.) ..................................................................................19

**<u>Preliminary Statement</u>**

This case is a business dispute between two Israeli companies which partnered together on event management software from October 2018 until just a few weeks ago. This is not a case of some kind of surreptitious data intrusion or theft; to the contrary, Plaintiff Bizzabo provided access to its systems so that they could collaborate as partners. "For example," the Complaint alleges, "[Defendant] Rosanski downloaded a project plan for one of Bizzabo's upcoming client events." (Compl. ¶ 42.)  Of course he accessed the project plan — as recently as early May, he was leading the project for this client.

While they were working together, Pixeline came to understand that Bizzabo was stealing its trade secrets and intellectual property. That is, Plaintiff was stealing Defendants' technologies — and Pixeline has stark evidence thereof. Pixeline is going to sue Bizzabo in Israel — where this case belongs. The parties' contracts contain crystal-clear choice of law clauses (Israeli law) and forum selection clauses (Israeli courts). This is unquestionably a dispute "arising out of or in connection with" the parties' contract.

***Bizzabo failed to disclose these agreements to the Court***. Bringing the action here was not warranted by existing law or by a nonfrivolous argument, and the Court should not countenance this blatant forum shopping.[1] Indeed, if this case were to proceed here, the Court would have to apply Israeli law in determining a dispute between Israeli companies, with much of the evidence in Hebrew.

Nor would Bizzabo be likely to prevail on the merits. Bizzabo did not keep the materials secret from Pixeline; to the contrary, it gave Pixeline access to its servers and platforms. And

---

[1] Bizzabo hangs its hat on a November 2020 agreement (ECF no. 5-1), ignoring the parties' main and subsequent agreements. As detailed below, although the November 2020 agreement does not have a forum selection clause, that claim should go Israel as well.

Pixeline didn't take anything to gain a competitive advantage; instead, it used materials to collaborate on projects, as well as to document evidence for its lawsuit in Israel.

The *ex parte* TRO should be vacated, the motion for a PI should be denied, and this case should be dismissed in favor of the forthcoming litigation in Israel.

<u>**Statement of Facts**</u>

**I.     <u>The Parties</u>**

Plaintiff Bizzabo, <u>Ltd</u>. is an Israeli company and Plaintiff Bizzabo, <u>Inc</u>. is its Delaware subsidiary. (Complaint, ECF no. 1, ¶¶ 5–6.) Defendant Pixeline Technologies, <u>Ltd</u>. is an Israeli company and Pixeline Technologies, <u>Inc</u>. is its Delaware subsidiary (together "Pixeline"). *See* Compl. ¶ 7; Declaration of Elad Rosanski, sworn May 23, 2022 ("Rosanski Dec.") ¶ 4.

Plaintiffs provide event management services. (Compl. ¶¶ 5–6.) Plaintiffs claim that "Bizzabo's technology powers all aspects of event planning and execution, including scheduling, marketing, ticket sales, website and mobile application building, attendee management and registration, broadcasting, and audience engagement." (*Id.* ¶ 12.) In fact, while Plaintiffs claim that their software "powers all aspects of event planning and execution" (Compl. ¶ 12), they do not actually have the technological capability to power the services they profess to provide. Instead, they relied on technology and other expertise provided by Pixeline, pursuant to agreements that Bizzabo failed to mention in its filing. (Rosanski Dec. ¶¶ 10–13, 33.)

**II.    <u>Relevant Agreements</u>**

    **A.     <u>The Parties' Main Agreement and its Exclusive Forum Selection Clause</u>**

On April 6, 2019, the parties entered into a "White Label Agreement." (Rosanski Dec., **Ex. B**, the "Main Agreement.") Under the Main Agreement, Pixeline allowed Bizzabo to use its confidential and proprietary technology under Bizzabo's branding, and market it to Bizzabo's clients. (Rosanski Dec. ¶ 38.)

Bizzabo failed to provide the relevant agreements to this Court. If it had, this Court would have seen the clear and exclusive choice of law and forum selection clause:

> This Agreement is governed by and construed in accordance with the internal laws of the State of Israel, …. The competent courts of the Tel Aviv-Jaffa District shall have <u>sole and exclusive jurisdiction over any issue arising out of or in connection with this Agreement and each party hereby submits itself to the exclusive jurisdiction of these courts</u>.

(Ex. B § 13.10, emphasis added.)  (Notably, the forum selection clause originated in Bizzabo's initial draft of the contract. *See* Rosanski Dec. ¶ 35 & Ex. A.)

The contract was regularly renewed until Pixeline terminated it in March 2022, because Bizzabo was stealing Pixeline's intellectual property and was not compensating it for its services. (Rosanski Dec. ¶ 40 & Ex. C.) But the parties nonetheless continued to work together, until just a couple of weeks ago, not wanting to leave their shared customers in a lurch. (*Id*. ¶ 41.)

### 1.    The Main Agreement governs both Ltd. and Inc. entities

The Main Agreement did not distinguish between the Ltd. and Inc. entities. It describes the "parties" as "Pixeline Technologies <u>Ltd</u>., a company incorporated under the Laws of the State of Israel located at 9 Omarim St, Omer Israel ('Supplier') [and] (2) Bizzabo <u>Ltd</u>., a company incorporated under the Laws of the State of Israel, located at 10 HaUmanim St, Tel Aviv Israel ('Customer')." (Ex. B, page 2, emphasis added.)

At the same time, the cover page references "Pixeline Technologies <u>Inc</u>. (Supplier)" and Bizzabo Ltd. (Customer)." (Ex B, cover, emphasis added.) And the contract is signed by "Bizzabo <u>Inc</u>." (Ex. B, page 26, emphasis added). Although the parties could have used more

careful wording, there is little doubt that the Main Agreement was intended to cover both the Ltd. and Inc. entities.[2]

### 2.    The Main Agreement was extended.

The April 2019 contract was made effective as of January 1, 2019 (Ex. B § page 3) and covered an initial term of 18 months. (Ex. B § 12.1). Then, as of June 1, 2020, it was extended by an amendment covering another six months. (Ex. D.) This amendment also reflected the parties' understanding that it applied to all of the various Ltd. and Inc. entities, referencing "between Pixeline Technologies Ltd.. [sic] a company incorporated under the laws of the State of Israel located at 9 Omarim St, Omer Israel ('Supplier'), and Bizzabo Inc., a company incorporated under the laws of the State of Delaware, USA ('Customer')." (Ex. D, emphasis added). In 2021 and early 2022, the Parties continued to work together under exactly the same terms and conditions of the Main Agreement, although the further extension was not memorialized in writing. (Rosanski Dec. ¶¶ 41, 50.)

### B.    The November 2020 Confidentiality Agreement

Plaintiffs provided this Court only one agreement – not the Main Agreement described above, but a November 2020 confidentiality agreement (ECF no. 5-1), apparently because it is the only agreement between any of the parties that does not contain a forum selection clause. The November 2020 agreement refers to "the Contractor," but this term is not defined. It is signed by Mr. Rosanski and he understood that he was signing on behalf of Pixeline. (Rosanski Dec. ¶ 59.)

### C.    The May 2021 Confidentiality Agreement

In May 2021, Bizzabo sought to acquire Pixeline. (The transaction was never

---

[2] Moreover, the Main Agreement explicitly includes "Affiliates" where there is "direct or indirect ownership of more than 50% of the voting securities of such entity." (Ex. B. § 1.1.)

consummated.) As part of the negotiation, Pixeline wanted a new, superseding confidentiality agreement. (Rosanski Dec. ¶ 60.) On May 6, 2021, Bizzabo Inc. and Pixeline Technologies Ltd. entered into a new confidentiality agreement to replace the November 2020 agreement.  (*Id.* ¶ 61 & Ex. E.) ***Bizzabo also failed to provide this agreement to this Court.*** Again, if it had, the Court would have seen the Agreement's clear and exclusive choice of law and forum selection clause:

> This Agreement (i) shall be governed by and construed in accordance with the laws of Israel, …. Each party hereby submits itself to the <u>exclusive jurisdiction of the courts of Tel Aviv-Jaffa, Israel</u>.

(Ex. E § 11, emphasis added.)

## III.    The Parties' Collaboration and Computer Systems

While the parties were still collaborating, Mr. Rosanski had access to Bizzabo's systems and engaged with customers on a regular basis. (Rosanski Dec. ¶¶ 63–75.) Mr. Rosanski was held out as the "Director of Onsite". (*Id.* ¶ 68.) For electronic files, Bizzabo used Google's GSuite platform to power its email, calendar, documents, spreadsheets, and Google Drive (cloud file server) systems.[3] Bizzabo created and paid for GSuite accounts (i.e., email and cloud file server access) for Mr. Rosanski and other Pixeline employees. That is, Mr. Rosanski and other Pixeline employees were able to use Bizzabo.com email addresses and were granted access (known as "permissions") to files on the Bizzabo.com Google Drive (i.e., file server).  (*Id.* ¶ 76.)

Mr. Rosanski's access to files on the Google Drive was controlled entirely by Bizzabo. (*Id.* ¶ 77.) Indeed, according to Bizzabo, it "tightly controls access to its electronic systems" by limiting Google drive access to individuals "with a Bizzabo account." (Compl. ¶¶ 22–23.) The

---

[3] GSuite is like a professional version of Gmail and is Google's competitor to Microsoft's Exchange and Outlook platforms. Instead of using Outlook (or Lotus Notes), businesses can deploy GSuite as an integrated platform to power their employees' email and file server storage from the cloud. It is the primary choice for many small businesses these days, which rely on GSuite instead of installing a physical server in their offices.

sworn declaration of Bizzabo's IT director, Michael Goncalves, explained that "[t]he security settings for documents created for the purposes of collaboration within Bizzabo are often changed so that they are only accessible to Bizzabo users with a link to the file." (Goncalves Dec., ECF no. 4 ¶ 10; Compl. ¶ 23.) This is correct — ***Mr. Rosanski and other Pixeline employees did not, and could not, access any files in the system that weren't set to allow him permissions to access***. (Rosanski Dec. ¶ 79; *see* Expert Declaration of Rajeev Surati, sworn May 23, 2022 ("Surati Dec.") ¶¶ 15–20.)

## IV.   The Parties' Relationship Deteriorates

When Bizzabo's efforts to acquire Pixeline were unsuccessful, it instead acquired another business – "Klik" – to try to provide similar services. (Rosanski Dec. ¶ 84.) But the Klik system lacks many features that Pixeline offered. So, Bizzabo continued to rely on Pixeline's technology and Pixeline still continued to work with Bizzabo, up until just a few weeks ago, not wanting to leave their shared customers in a lurch. (*Id*. ¶ 85–87, 97.)

Behind their backs, however, Bizzabo was stealing Pixeline's technology. It became apparent that Bizzabo's strategy was to string Pixeline along in negotiations, while stealing Pixeline's proprietary technology with the plan to continue to use it without authorization or compensation to Pixeline. (*Id*. ¶ 89.) Indeed, Pixeline could see on the Jira platform (a collaborative tool for product development) that the Bizzabo product teams were explicitly asking the development teams to steal Pixeline's technology and features. (*Id*. ¶ 90.)  In fact, during a July 20, 2021 Zoom meeting, Daniel Doppelt (Bizzabo's lead system architect) openly asked, given that Bizzabo's own technologies (including the newly-acquired Klik product) were incapable of adequately servicing its customers, whether Bizzabo's employees should "copy paste" Pixeline's product. (*Id*. ¶ 91.)

Pixeline repeatedly advised Bizzabo that it had no right to use Pixeline's proprietary technologies in this manner. (*Id*. ¶ 93.) In March 2022, Mr. Rosanski of Pixeline advised Eran Ben-Shushan (Bizzabo's CEO) that Pixeline would initiate legal proceedings against Bizzabo to recover outstanding monies owed and to compensate for damages caused by Bizzabo's theft of Pixeline's intellectual property. *See id*. ¶ 95 & Ex. F.

And, less than two weeks ago, Pixeline's Israeli counsel also advised Bizzabo's Israeli counsel in email correspondence that Pixeline would be pursuing its claims against Bizzabo. (*Id*. ¶ 101 & Ex. G.)

## V.    Working Together and Also Preserving Evidence of Bizzabo's Wrongdoing

As noted above, Mr. Rosanski and other Pixeline employees were granted access to the Bizzabo files and systems, and Mr. Rosanski received and downloaded files throughout the parties' relationship. (*Id.* ¶ 102.) For example, the OTSC papers accuse Mr. Rosanski of downloading the "Onsite Services Tracker 2021-2022." But of course Mr. Rosanski had this file — it is the list tracking all of the events that Pixeline and Bizzabo collaborated on. (*Id.* ¶ 116(2).)

Mr. Rosanski also saved down some materials pertaining to the claims that Pixeline intends to bring against Bizzabo in court in Israel. (*Id.* ¶ 108.) These materials demonstrated that Bizzabo was using confidential and proprietary information stolen from Pixeline, including documents showing that Bizzabo itself did not have the technological capacity to provide these services without using Pixeline's intellectual property. ***Bizzabo's systems permitted Mr. Rosanski to access these files; if they did not, he would not have been able to access them.*** (*Id.* ¶ 110; Surati Dec. ¶¶ 15–20.)

After Pixeline's Israeli counsel made clear that Pixeline would sue Bizzabo for this misconduct, Bizzabo apparently shut off Mr. Rosanski's access to their files and began an investigation into files he had recently downloaded. (Rosanski Dec. ¶ 113.)

## VI.   <u>Bizzabo Clients Contact Pixeline</u>

While they were still working together, Bizzabo and Pixeline had jointly met with clients and potential clients, and the clients had the contact information for Pixeline's representatives. (Rosanski Dec. ¶ 117.) Unsurprisingly, when clients learned that Bizzabo's new Klik platform lacked the features that had been set to be provided by Pixeline, they were highly concerned and frustrated. They already had phone numbers for Pixeline's executives or employees, and naturally reached out directly to Pixeline concerning their upcoming events. (*Id*. ¶ 118.)

Pixeline learned that Bizzabo was (falsely) telling its customers that Pixeline's service lacked quality. In speaking to those customers, Pixeline corrected these misstatements and offered to provide the same features as had been promised. (*Id*. ¶ 119.) For example, the Complaint refers to a particular customer that had been considering working with Bizzabo and Pixeline. (Compl. ¶ 50.) Mr. Rosanski had participated in the pitch to the customer and Mr. Rosanski led the planning for this project from the start. (Rosanski Dec. ¶ 120.) Moreover, as part of learning about the capabilities, the client had a meeting with Pixeline in Los Angeles, in person, to watch Pixeline in action. Indeed, the customer was planning to move forward on the basis of Pixeline's software and on-site solutions alone. (*Id.* ¶ 121.)

When the customer's outside production company learned that Pixeline was no longer working with Bizzabo, and that the customer could not achieve what Bizzabo had previously promised them, the production company apparently recommended to its customer to work with Pixeline directly. The customer then reached out to Mr. Rosanski, asking Pixeline to provide the service directly. (*Id.* ¶ 122–23.) Pixeline does not believe that the customer ever contracted with Bizzabo; to the contrary, it directly engaged Pixeline, likely because Pixeline's technology was

superior.  (*Id.* ¶ 124.)[4] (And even if the client did have a contract with Bizzabo, the client would

have the right to opt-out as Bizzabo could not provide what the promised.)

## VII.     <u>Bizzabo Files Litigation in New York</u>

In an apparent attempt to suppress these inconvenient truths, Bizzabo filed this action in

New York. Remarkably, the complaint contains no mention whatsoever of the forum selection

clauses in which Plaintiffs agreed to hear their disputes exclusively in Israeli courts.

<u>Legal Argument</u>

## I.     <u>The Court should apply the forum selection clauses.</u>

"There is a strong federal policy in favor of the enforcement of forum selection clauses."

*In re Refco Inc., Sec. Litig.*, 2009 WL 10666099, at *5 (S.D.N.Y. Nov. 20, 2009). The Second

Circuit applies a four-part analysis for enforcement of forum selection clause:

> [1] The first inquiry is whether the clause was reasonably communicated to the party
> resisting enforcement. [2] The second step requires us to classify the clause as mandatory
> or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the
> designated forum or simply *permitted* to do so. [3] Part three asks whether the claims and
> parties involved in the suit are subject to the forum selection clause.[5]

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (emphasis original). If the first

three factors are satisfied, "it is presumptively enforceable." *Id*.  "The fourth, and final, step is to

ascertain whether the resisting party has rebutted the presumption of enforceability by making a

sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause

---

[4] Following this phone call, Mr. Rosanski reached out to a small number of other customers that
had been working with Pixeline to ensure they had not received similar misinformation
concerning Pixeline's services. To the extent the issue came up during these calls, he accurately
advised these customers about Pixeline's technology and the fact that Bizzabo did not have a
comparable product. Rosanski Dec. ¶ 125.

[5] "If the parties' agreement also contains a choice of law provision, as is the case here, the
chosen law governs the analysis for parts two and three of the inquiry as substantive questions of
contract law." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *6 (SDNY
Mar. 10, 2021) (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 217–18 (2d Cir. 2014)). Here,
Israeli law would compel the same result: the action should be heard in Israel.

was invalid for such reasons as fraud or overreaching." *Id*. at 383–84 (citation omitted). In assessing a party's motion for a preliminary injunction, the "determination of [] likelihood of success on the merits … hinges on a determination of the scope and effect of the forum selection clauses" applicable in the case. *Comcast Corp. v. Rovi Corp.*, 2016 WL 4991625, at *5 (S.D.N.Y. Sept. 16, 2016).

Applying this analysis here leads to the inescapable conclusion that the Israeli forum selection clauses should be enforced. Plaintiff knows that this case belongs in Israel; they even asked that the TRO be served on "Pixeline Technologies, Inc.'s outside corporate counsel in Israel." (ECF no. 13.) *See, e.g.*, *Freeman v. Bianco*, 2003 WL 179777, at *7 (S.D.N.Y. Jan. 24, 2003) (ordering plaintiffs and counsel to show cause under Rule 11(c) after they filed a suit in the SDNY even though the parties' agreements have "clear choice of forum clauses").

### A. <u>The Israeli forum selection clause was reasonably communicated to Bizzabo.</u>

The forum section clause appears – at Plaintiffs' suggestion – in not one, but two different agreements that were specifically negotiated between Bizzabo and Pixeline. (Rosanski Dec. ¶¶ 35–39, 60–62 & Exs. B, E.) In both agreements, the "clause was reasonably communicated through clear and unambiguous language and visible placement." *HSM Holdings, LLC v Mantu I.M. Mobile*, 2021 WL 918556, at *7 (S.D.N.Y. Mar. 10, 2021).[6]

The forum selection clauses are in standard sections in the main body of the relevant agreements. And they clearly and unambiguously provide for the "exclusive jurisdiction" of

---

[6] *See, e.g.*, *BMR & Assocs., LLP v. SFW Cap. Partners, LLC*, 92 F. Supp. 3d 128, 135 (S.D.N.Y. 2015) ("there can be no question that the forum selection clause was 'reasonably communicated to the party resisting enforcement' because the Plaintiffs, the parties resisting enforcement, actually drafted the Agreement and included the forum selection clause."); *Leviton Mfg. Co., Inc. v. Reeve,* 942 F. Supp. 2d 244, 264 (E.D.N.Y. 2013) (finding "no reason to believe that the clause was not reasonably communicated" where the parties "signed the agreement containing the clause and thus presumably had an opportunity to review its contents").

Israeli courts. This is more than sufficient to show that the forum selection clause was reasonably communicated to Plaintiffs.

### B.    The Israeli forum selection clause is mandatory.

"A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386 (citation omitted). The language of the forum selection clauses in both the Main Agreement and the Confidentiality Agreement is unambiguously mandatory – it *requires* the parties to bring any dispute in the designated forum, i.e. the Israeli courts.

Specifically, the Main Agreement provides that: "The competent courts of the Tel Aviv-Jaffa District shall have <u>sole and exclusive jurisdiction</u> over any issue arising out of or in connection with this Agreement and each party hereby submits itself to the <u>exclusive jurisdiction</u> of these courts. (Ex. B § 13.10, emphasis added.) And the Confidentiality Agreement provides that "Each party hereby submits itself to the <u>exclusive jurisdiction</u> of the courts of Tel Aviv-Jaffa, Israel." (Ex. E § 11, emphasis added.)

### C.    The claims and parties here are subject to the Israeli forum selection clause.

#### 1.    Plaintiff's claims concern issues arising out of or in connection with the Main Agreement.

"The Second Circuit has held consistently that forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses." *TradeComet*, 693 F. Supp. at 378. Here, the Agreement uses broad language to describe the disputes that are subject to the mandatory Israeli forum selection clause: Israeli courts have "exclusive jurisdiction over <u>any issue arising out of or in connection with this Agreement</u>. (Ex. B § 13.10, emphasis added.) Courts have "described the term 'relating to' as equivalent to the phrases '<u>in connection with</u>' and 'associated with,' …, and have held such phrases to be broader

in scope than the term 'arising out of.'" *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d

123, 128–29 (2d Cir. 2001) (emphasis added, citation omitted).; *see also Phillips*, 494 F.3d at

389–90 (same in addressing narrower "arise out of" phrasing in forum selection clause).[7]

      Plaintiffs' various claims all fundamentally relate to the parties' relationship under the

Main Agreement. It is that agreement which governed the business dealings between the parties,

and all of the information at issue here was made available in connection with that agreement.[8]

Further, the second exclusive forum selection clause in the more recent confidentiality

agreement, read together with the Main Agreement and in light of Plaintiffs' allegations that Mr.

Rosanski breached some type of confidentiality agreement with Plaintiffs, provides further

evidence that these claims belong in Israeli courts. *See Bent v. Zounds Hearing Franchising,*

*LLC*, 2015 WL 7721838, at *6 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.) (rejecting plaintiff's

argument concerning inapplicability of forum selection clause "because the forum-selection

clause in the [agreements] expressly encompasses 'any actions arising out of or related to this

Agreement [or the Addendum]'" (second alteration in original)).

---

[7] *See also Prod. Resource Group, L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 412
(S.D.N.Y. 2012) ("Courts have identified at least two categories of terms describing the scope of
a forum selection clause. The narrower category includes terms such as 'arise out of,' 'arise
from,' or 'arising under'" whereas the broader category includes terms such as 'in connection
with,' 'relating to,' or 'associated with.'").

[8] *See Prod. Resource Group*, 907 F. Supp. 2d at 414–15 ("Given the broad definition of the
phrase 'relating to,' the Court concludes that Plaintiff's patent claims relate to the License and
Consultancy Agreements. While it may be that Plaintiff does not base its patent claims on the
Agreements, that is, they do not arise from the Agreements, there is little doubt that the patent
claims relate to the very agreements that governed Defendants' use of Plaintiff's patents."); *MAK*
*Marketing*, 620 F. Supp. 2d at 306 (holding that copyright infringement claim was governed by
forum selection clause which covered disputes "in connection with" the license agreement).

      2.      **The parties to this action are subject to the agreements' forum selection clauses.**

Whether Bizzabo or Pixeline are named parties, successors, or affiliates to these agreements, they are bound by the forum selection clause.[9]

In any event, the Inc. entities are bound by the Main Agreement's forum selection clause under clear Second Circuit precedent. "It is well-established that forum-selection clauses are enforceable not only against signatories but also against non-signatories that are either successors-in-interest or 'closely related' to a signatory." *Midamines SPRL Ltd. v. KBC Bank NV*, 2014 WL 1116875, at *5 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 F. App'x 43 (2d Cir. 2015) (citing *Magi XXI, Inc.*, *v. Strato della Citta del Vaticano*, 714 F.3d 714, at 722–23 (2d Cir. 2013); *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009)). "Courts ... have found non-signatories to be 'closely related' where their 'interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct.'" *Id*. (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Canal Distrib. S.A.S.*, 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010)).

The touchstone for determining whether a non-signatory is bound by a forum selection clause is whether "enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *Metro-Goldwyn-Mayer*

---

[9] Plaintiff Bizzabo Ltd. and Pixeline Technologies Ltd. (sued here as Defendant "Pixeline Technologies Inc. also known as Pixeline Technologies Ltd.") are named parties to the Main Agreement. They are clearly bound by its mandatory forum selection clause. Further, the cover of the Main Agreement includes Pixeline Technologies Inc. and the signature page includes Bizzabo Inc. In addition, they are also both "Affiliates" (Ex. B § 1.1.) which stand to benefit from the Agreement.[9]

In addition, the May 2021 Confidentiality Agreement between Bizzabo Inc. and Pixeline Technologies Ltd. is expressly made on their own "behalf and on behalf of [their] subsidiaries and affiliates," and contains an additional mandatory forum selection clause choosing "the courts of Tel Aviv-Jaffa, Israel." Ex. E § 11.

*Studios Inc.*, 2010 WL 537583, at \*5. *Ujvari v. 1stdibs.com, Inc.*, 2017 WL 4082309, at \*10–11 (S.D.N.Y. Sept. 13, 2017), is instructive. The court there concluded "that Ujvari—who serves as 'the President and sole employee and shareholder of GT Art [Consulting],' and who is the true party-in-interest for purposes of the consulting contracts—is 'closely related' to GT Art Consulting and therefore properly subject to the forum selection clause." *Id*. The same is true here with respect to any parties that are not clearly listed as subject to the relevant agreements.

### D.  Bizzabo cannot show that enforcement of the Israeli forum selection clause would be unreasonable or unjust, or that it is invalid.

Because the forum selection clause was reasonably communicated to Plaintiffs, is mandatory, and encompasses the claims and parties at issue, there is a presumption of enforceability. *Phillips*, 494 F.3d at 383. Plaintiffs may overcome this presumption only if they can show "that enforcement of the forum selection clause would be unreasonable or unjust." *Id*. at 384 (citation omitted). In the Second Circuit, this requires an examination of "four factors." *Martinez v. Bloomberg LP*, 740 F.3d 211, 227–28 (2d Cir. 2014). Courts in the Second Circuit will decline to enforce a forum selection clause if: "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Id*.

None of these factors have any relevance here. Plaintiff has not claimed that the forum selection clauses resulted from any fraud or overreaching. There is nothing fundamentally unfair about Israeli law, which Plaintiffs suggested in the first place. Enforcement is consistent with the federal policy in favor of enforcing forum selection clauses and preserving reasonable business expectations, and would not contravene any public policy of New York. Finally, there is no

reason to believe that a trial in the Israeli courts will be so inconvenient; to the contrary, it is a far more convenient place for a dispute applying Israeli law with documents in Hebrew.

In sum, the Court should enforce the forum selection clauses and reject Plaintiffs' blatant forum shopping and application for a preliminary injunction in the patently wrong forum.

## II. **The Court lacks jurisdiction over all Defendants.**

"The cardinal principle that the district court is powerless to proceed in the absence of personal jurisdiction applies with no less force when the court is presented with a motion for a preliminary injunction." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 611 (S.D.N.Y. 2016). To "obtain a preliminary injunction, a plaintiff must make more than a 'prima facie showing of jurisdiction.'" *CleanSpark, Inc. v. Discover Growth Fund, LLC*, 485 F. Supp. 3d 494, 500 (S.D.N.Y. 2020) (citation omitted). It must show "at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction over the non-moving party." *Id*. Here, the motion for a preliminary injunction contains no basis for asserting personal jurisdiction over any Defendant.

*No General Jurisdiction*. General jurisdiction requires a showing that Pixeline is incorporated in New York, has its principal place of business there, or some other exceptional reason why Pixeline is "essentially at home" in New York. *Pablo Star Ltd.*, 170 F. Supp. 3d at 606. Here, the sole factual allegations that relate to New York are assertions that Pixeline "is registered to conduct business in New York," and allegedly has offices here, including a "principal executive office address." (Compl. ¶¶ 7–8.) This is inaccurate; Pixeline's principal place of business is in Israel, and it has no offices in New York. (Rosanski Dec. ¶¶ 15–16.[10]) The

---

[10] The Court need not accept as true jurisdictional allegations that are controverted by Defendants' affidavits. *See Allojet PLC v. Vantage Assocs.*, 2005 WL 612848, at *3 (S.D.N.Y. Mar. 15, 2005) (where a defendant "rebuts a plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff

parties' agreements also plainly state that Pixeline is an Israeli company with offices in Israel. (Ex. B at page 2.) Before Covid, Pixeline had one employee (with a home office) in New York, but not since early 2020. (Rosanski Dec. ¶ 16.) Plaintiffs are clearly unable to plead, much less prove, that Pixeline is incorporated in New York or has its principal place of business there. As to Mr. Rosanski, he lives and works in Florida. (*Id.* ¶ 14.) He has not been to New York recently except for a 5-day personal vacation with no connection to Pixeline or any other matters at issue in this litigation. (*Id.* ¶ 32.) Accordingly, there is no general jurisdiction over Pixeline or Mr. Rosanski.[11]

*No Specific Jurisdiction*. "Specific jurisdiction requires a connection between the forum and the underlying controversy, most often activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Pablo Star Ltd.*, 170 F. Supp. 3d at 606. But none of Plaintiffs' submissions demonstrate any factual connection between New York and the claims at issue here. Plaintiffs invoke CPLR 302(a)(1)–(3), which provide for long-arm jurisdiction; this specific jurisdiction is limited to causes of action that arise from the acts enumerated above. *Id.*

---

does not counter that evidence—the allegation may be deemed refuted.") (citation, alterations and internal quotation marks omitted); *see also Pablo Star Ltd*, 170 F. Supp. 3d at 605.

Importantly, "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991).

[11] *See Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 252 F. Supp. 3d 369, 375 (S.D.N.Y. 2017) ("The FAC is clear that YuuZoo is incorporated in Bermuda and has its principal place of business in Singapore. Although YuuZoo may have subsidiaries in New York, that does not 'render it essentially at home' here. Consequently, YuuZoo is not subject to this Court's general jurisdiction."); *Shaoulian-Tehrani v. Khatami*, 2008 WL 1790386, at *3 (S.D.N.Y. Apr. 21, 2008) ("General personal jurisdiction surely does not exist: Khatami was not physically present within the state when he was served; he is not and was not a resident or domicile of New York; and plaintiffs have not made any showing that he was doing business in New York.").

But none of these provisions apply here. First, the complaint does not allege that Defendants transacted <u>any</u> business or supplied goods or services in New York, let alone a cause of action that arises from any New York specific facts. Second, the complaint does not allege a single act that was committed within New York, much less a tortious act from which Plaintiffs' causes of action could arise. Finally, the complaint does not allege that Defendants engage in any of the conduct described in Section 302(a)(3) – there is no persistent course of conduct in New York, no substantial revenue derived from New York, no consequences in the state.[12] Accordingly, there can be no specific jurisdiction. Because there is no New York jurisdiction over Defendants, the Court should deny Plaintiffs' motion for a preliminary injunction and dismiss the complaint.

### III.    Plaintiffs have not shown that an injunction is merited.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) (emphasis in original). Further where, as here, "a movant's desired injunction would alter, rather than preserve, the status quo, that injunction is mandatory in nature and subject to heightened scrutiny." *Yang v. Kosinski*, 960 F.3d 119, 127–28 (2d Cir. 2020). To satisfy that heightened burden, the movant must make a "strong" showing of irreparable harm and demonstrate a "clear or substantial likelihood of success on the merits." *Id*.

---

[12] It is well-settled that "residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (citation omitted). And for that reason, the Second Circuit has "rejected as insufficient ... allegations of remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here." *Id*.

Bizzabo argues that its claims are likely to succeed, that it will suffer irreparable harm if Defendants are not enjoined, and that the equities weigh in its favor. None of this is correct. In fact, the injunction requested by Bizzabo attempts to unfairly block Pixeline from truthfully advising potential customers that Bizzabo does not have the technology or know-how to provide the services, other than through the misappropriation of Pixeline's intellectual property and trade secrets. Effectively, Bizzabo seeks an injunction that would allow it to continue passing Pixeline's products off as its own, and help it conceal evidence of its wrongdoing from Pixeline. This is manifestly inequitable and not a proper purpose for a preliminary injunction. The motion should be denied even if this Court were the proper forum.

### A.    Bizzabo is unlikely to succeed on the merits of any of its claims.[13]

#### 1.    Bizzabo's trade secret misappropriation claims fail.

To establish misappropriation of trade secrets, Bizzabo must show: "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instr., Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). Plaintiffs cannot establish either element.

### The information at issue is not a trade secret.[14]

Fundamentally, Bizzabo's trade secret claim is the pot calling the kettle black. It seeks to conceal its own misappropriation of intellectual property and trade secrets by dressing up the

---

[13] For purposes of this briefing, Pixeline explains why Plaintiffs' claims fail under the laws they invoke. However, given the Israel choice of law clause in the Main Agreement and that the relationship is largely centered in Israel, Pixeline does not concede that New York law applies and reserves all rights to supplement these arguments with additional arguments concerning Israeli law.

[14] *See N. Atl. Instr.*, 188 F.3d at 44 ("[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'") (citation omitted).

evidence of its wrongdoing as itself a trade secret. The materials downloaded by Mr. Rosanski simply confirm that Bizzabo has directly copied Pixeline's technology. (Rosanski Dec. ¶¶ 108, 115.) Undoubtedly, Bizzabo would prefer to keep these activities secret. But this is not the type of sensitive business information that trade secret law protects.

Bizzabo labelling evidence of its own misconduct as "project plans" and "internal roadmaps" does not render them trade secrets. Bizzabo's core complaint is that "Defendants have told certain customers *what features the Company does not have* and that certain of Bizzabo's technology has never been used before." Plaintiff's Memorandum of Law in Support of TRO & PI, ECF no. 6 ("MOL") at 18 (citing Simone Astuni Dec., ECF no. 6 ("Astuni Dec.") ¶ 21) (emphasis added). But Bizzabo should not have "trade secret" protection to conceal from its customers its lack of experience and which features it cannot provide. This is precisely the opposite of what trade secret protection actually covers: useful information that provides unique value to customers. *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y.) ("A trade secret, by definition, must have economic value and provide a competitive advantage due to the exclusive use of a product or technique.") (citation omitted).

Here, in contrast, and, as detailed in Mr. Rosanski's declaration, it's plaintiff that is stealing *defendant's* technology.[15]  This highlights the fundamental flaw in Plaintiffs' theory that these are trade secrets: trade secret protection clearly does not exist to enable a business to misrepresent its capabilities to customers while barring competitors from making accurate

---

[15] Plaintiffs do not meaningfully address the other factors that courts consider to determine whether information constitutes a trade secret, such as the amount of time or money expended in preparing it and the ease or difficulty with which it could be duplicated. Plaintiffs do assert—without any factual support—that Bizzabo "devoted substantial resources to developing this information" and "believe that a competitor could not legitimately acquire this information without investing the same substantial resources" Astuni Dec. ¶¶ 10, 12. However, these conclusory assertions are not entitled to any weight.

corrective statements. *Cf.* MOL at 12 ("The information would also enable a competitor to approach Bizzabo clients *and weaponize the information to harm Bizzabo's reputation*") (citing Astuni Dec. ¶ 11) (emphasis added); *id.* at 21 ("Defendants have *deployed Bizzabo's confidential information against it* in conversations with Bizzabo's own customers.") (emphasis added).

**Plaintiffs did not take reasonable measures to protect the information.**

The Court should also reject Bizzabo's claims concerning the "security" measures it uses to protect these allegedly confidential documents. Mr. Rosanski downloaded the documents directly using his own account with access provided by Bizzabo, as Plaintiffs' own submissions reflect. *See* Goncalves Dec. ¶ 13 ("I reviewed logs of Elad Rosanski's user activity which revealed that Rosanski downloaded" information). While Bizzabo now asserts that Rosanski had "no right to access and no legitimate business need for" these documents, *id.* ¶ 13, *he downloaded them openly under his own account, using the access that was granted to him by Bizzabo.* (Rosanski Dec. ¶¶ 79, 110; Surati Dec.)

Bizzabo's submission inexplicably suggests that it was somehow unaware that Mr. Rosanski had access to these supposedly top-secret documents. Even assuming this is true, the fact that Bizzabo does not know who has permissions to access to its files does not mean that Mr. Rosanski accessed them improperly.

**Defendants are not using the information improperly.**

Mr. Rosanski downloaded the documents at issue solely (a) as part of the parties' collaboration, serving their shared customers; or (b) to preserve evidence of Plaintiffs' theft of Pixeline's intellectual property. (Rosanski Dec. ¶ 102–08.) No information from these documents was used to contact Bizzabo customers, and no information gleaned from these documents shared with them. (*Id.* ¶ 109.)

Plaintiffs' cases are therefore inapposite. They address circumstances where information about future plans and product strategies is used to compete unfairly <u>by developing business strategies around them</u>. Defendants are not alleged to have done this or anything like it. They preserved evidence for litigation, and they truthfully told customers that Bizzabo would no longer be using their software and that Bizzabo did not have the ability to provide equivalent service levels. Bizzabo may wish to conceal this information from its customers, but that does not render it a trade secret – regardless of whether the information is also reflected in documents that Bizzabo refers to as "project plans", "internal roadmaps," and the like.

### 2.    Bizzabo's breach of contract claim fails.

Bizzabo's breach of contact claim against Mr. Rosanski suffers from similar infirmities. Nothing in the confidentiality provisions of the parties' agreements could or would prevent Pixeline from collecting evidence concerning Bizzabo's own misappropriation of trade secrets and intellectual property. Furthermore, Bizzabo materially breached those agreements by committing the aforementioned misappropriation, and accordingly cannot rely on the confidentiality provision. *See Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 2007 WL 1988150, at *9 (S.D.N.Y. July 10, 2007)  ("A fundamental principle of contract law is that a material breach of a contract by one party, which "substantially defeats the purpose of that contract," discharges the further contractual obligations of the non-breaching party."). Finally, even if there are questions of fact that must be litigated concerning alleged breaches of the parties' agreements, those issues must be addressed in Israel under Israeli law.

### 3.    Bizzabo's tortious interference claims fail.

A claim for tortious interference requires the plaintiff to show: "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without

justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (brackets in original). In addition, "[i]t is imperative that, in bringing a tortious interference claim, a plaintiff identify 'the relevant terms of the contract[ ] that existed' that were breached…." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 791 (S.D.N.Y. 2019) (citation omitted).[16]

Bizzabo fails to identify any specific contract that was actually breached, nor specific contractual terms that were allegedly breached. Instead, it confirms that its business relationships at issue remain intact. *See* Astuni Dec. ¶¶ 22, 27 (vague assertions that Defendants' statements caused Bizzabo's "customers" to "panic," but "Bizzabo was able to work with this customer and salvage their faith in Bizzabo for now."); ¶ 24 (customer "called off" the event, without specifying whether or not there was any contract in place and how it was breached).

Bizzabo also addresses one *prospective* contract. Pleading interference with the prospective contract would require showing "(a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship." *Int'l Shoppes v. At the Airport*, 131 A.D.3d 926, 935 (2d

---

[16] *See also WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*, 2011 WL 2565284, at *6 (S.D.N.Y. June 22, 2011) (a "plaintiff must specifically plead the existence of a valid contract and provide some details about its terms and its breach"); *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012) ("Plaintiff has not plausibly alleged adequate details about a specific contract between itself and a third party, but merely has alleged that it has 'agreements' with its customers. This is insufficient."); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (holding that claim for tortious interference with a contract failed to state grounds for relief because it "simply allege[d] that a contractual relationship existed between [the parties], but sets forth no facts to allege what kind of contract [they had], whether it was nonexclusive, and whether it was valid.").

Dep't 2015). But, nothing in the law or the parties' agreements prevents Mr. Rosanski from making accurate statements about Bizzabo's technology capabilities, or lack thereof.

### 4.     Bizzabo's common law unfair competition claim fails.

Plaintiffs' unfair competition claim also fails. Defendants have not misappropriated any "labor or expenditures" of Plaintiffs. The inverse is true. Bizzabo has misappropriated Pixeline's efforts in developing its event planning software, and now seeks to pass it off as Bizzabo's own – without compensating Pixeline. As explained above, Mr. Rosanski downloaded the documents at issue solely (a) as part of the parties working together; and (b) to preserve them as evidence of Bizzabo's unauthorized misappropriation of Pixeline's technologies. (Rosanski Dec. ¶¶ 102–08.) And Pixeline has every right to tell potential customers that this technology belongs to Pixeline and not to Bizzabo. There is nothing "unfair" about collecting evidence of Bizzabo's misconduct or correcting Bizzabo's false statements that it can provide equivalent services without Pixeline. This claim should also be dismissed because it merely duplicates Plaintiffs' other claims. *Cont. Indus. Group, Inc. v. Altunkilic*, 788 Fed. Appx. 37, 43 (2d Cir. 2019).

### 5.     Bizzabo's civil conspiracy claim fails.

There can be no conspiracy between Pixeline and Mr. Rosanski because a conspiracy cannot exist between a principal and an agent. It is well established that "agents and employees of a corporation cannot conspire with their corporate principal." 15A C.J.S. Conspiracy § 10. The specific acts Bizzabo complains of were performed by Mr. Rosanski, in his capacity as CMO of Pixeline. There can be no conspiracy between Pixeline and Mr. Rosanski. The complaint specifies not a single act committed by any other "co-conspirator", and therefore fails to plead any conspiracy. Adding "John Doe" defendants and claiming without any factual support that they exist and conspired together does not changes this result.

In addition, a "claim of conspiracy cannot stand alone and must be dismissed if the underlying independent tort has not been adequately pleaded." *Ho Myung Moolsan Co., Ltd. v. Manitou Min. Water, Inc*., 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009). As explained above, Plaintiffs' other causes of action fail. The conspiracy claim fails along with them. *Id*.

## IV.    <u>Bizzabo will not suffer irreparable harm.</u>

"[C]onclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm." *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 236 (S.D.N.Y. 2014). But that is all Bizzabo offers here. In any event, the only damage alleged – the alleged loss of one business contract valued at $300,000 – is compensable by money damages.

## V.    <u>The equities do not weigh in Bizzabo's favor.</u>

The equities here weigh heavily in favor of Defendant Pixeline. Bizzabo obtained access to Pixeline's software under false premises, and now seeks to pass it off as its own. When Pixeline demanded that Bizzabo honor the parties' agreements and respect Pixeline's intellectual property rights, Bizzabo instead filed this litigation in New York. But Plaintiffs' carefully worded affidavits cannot hide the fact that what Bizzabo seeks to conceal is simply the truth about its inferior product offerings. In addition, Plaintiffs failed to advise the Court of the numerous exclusive forum selection clauses requiring this dispute be heard in Israel. This case should never have been filed, and it certainly should not have been filed here. *Rauch Indus., Inc. v. Radko*, 2022 WL 769385, at *10 (S.D.N.Y. Mar. 14, 2022) ("This fact coupled with Plaintiff's failure to advise the Court of that agreement causes the Court to view Plaintiff's motion for injunctive relief as particularly suspect.").

The equities weigh heavily in favor of sending Bizzabo to litigate in the parties' chosen forum, allowing Pixeline to preserve evidence of Bizzabo's misconduct, and in favor of allowing

Pixeline to fairly markets its product – including with truthful comparisons to Bizzabo. The truth is that Bizzabo does not have the technology to offer the same services provided by Pixeline. There is nothing equitable about letting Bizzabo misrepresent that fact to potential customers.

**VI.**      **In the alternative, the Court should impose a substantial bond.**

Pixeline's business will be substantially and irreparably damaged if it is barred from rebutting Plaintiffs' false statements that it offers a product that is equivalent to or better than what Pixeline offers. Further, Bizzabo already owes Pixeline substantial amounts of money that remain unpaid and may be experiencing financial difficulties. In these circumstances, should the Court continue an injunction, a substantial bond (under FRCP 65(c)) of no less than $200,000 is appropriate.

**Conclusion**

Defendants respectfully submit that the *ex parte* TRO should be vacated, the motion for a Preliminary Injunction should be denied, and this case should be dismissed in favor of the forthcoming litigation in Israel. Further, the case should be stayed for 21 days to allow time for Plaintiffs to withdraw their pleading.

Dated:  May 23, 2022

                                   Respectfully Submitted,

                                   POLLOCK COHEN LLP

                                   By:  */s/ Adam Pollock*
                                   Adam Pollock
                                   60 Broad St., 24th Fl.
                                   New York, NY 10004
                                   (212) 337-5361
                                   Adam@PollockCohen.com

                                   *Counsel for Defendants*